**Earl Randal, Appellant, v. Clarence Deka, Appellee.**

**Gen. No. 46,743.**

First District, Second Division.
April 24, 1956.
Rehearing denied May 3, 1956.
Released for publication May 15, 1956.

11

Arthur S. Gomberg, and Joe Reiff, both of Chicago, for appellant; Samuel Nineberg, of Chicago, of counsel.

Erwin H. Wright, and James E. Hastings, both of Chicago, for appellees.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

An action was brought by the plaintiff against the defendant for personal injuries sustained by the plaintiff, a pedestrian, when he was struck by the automobile of defendant at the intersection of North avenue and Linder street in the City of Chicago. At the trial the jury returned a verdict in favor of the defendant. The trial court overruled plaintiff's motion for new trial and entered judgment on the verdict, from which judgment this appeal is taken.

The plaintiff urges that the court erred in giving instructions to the jury on behalf of the defendant and in certain rulings on the evidence, and that the the verdict is against the manifest weight of the evidence.

The defendant's theory is that the plaintiff was guilty of contributory negligence in crossing the street directly in front of defendant's automobile; that the plaintiff was not crossing the street at a crosswalk and that, even if he was, he nevertheless was guilty of contributory negligence since he had been standing in a place of safety on the raised center portion of North avenue and left that place of safety when the defendant's car was so close to him that it could not be stopped; that the defendant was proceeding at a reasonable rate of speed and was in the exercise of ordinary care.

North avenue at the scene of the accident is about fifty feet wide. Down the center of that street is a raised concrete abutment two or three feet wide and four or five inches high. The east and west drives of North avenue are each approximately twenty-seven feet wide. Linder avenue from curb to curb is about twenty-five feet wide, and as it crosses North avenue jogs west, that is, Linder avenue on the south side of North avenue is farther west than Linder avenue on the north side of North avenue. The accident occurred September 6, 1954 at about eight o'clock in the evening. The pavement was dry. The weather was clear,

13

and though it was dusk at the time of the accident, visibility was good.

At the time of the accident plaintiff was going south across North avenue. The evidence is in conflict as to whether or not at the time he was within the lines of the east crosswalk of Linder avenue. There is no dispute that the automobile driven by the defendant struck the plaintiff, and that he was thrown forward and to the right of the car. He was thrown five feet according to testimony of defendant's witness. Plaintiff was a man thirty-two years of age in previous good health, and he sustained serious injuries. The defendant at the time of the accident was eighteen years old. The evidence is in conflict as to the speed at which the defendant was traveling and as to the efforts he made to avoid striking the plaintiff.

The plaintiff urges that the jury was improperly instructed.

The court gave nineteen instructions at the request of the defendant. Eight of these concluded with "you should find the defendant not guilty" or similar language. In addition, other instructions, while not peremptory in form, contained statements to the effect that under certain circumstances the plaintiff would not be entitled to recover. Seven of the instructions were concerned with the contributory negligence of the plaintiff. Two separate instructions which we will discuss later set out in haec verba the identical statutory provision governing the duty of a pedestrian crossing a roadway at any point other than a marked crosswalk.

In Chism v. Decatur Newspapers, Inc., 340 Ill. App. 42, the court uses language which is particularly apt and applicable to the case now before us. In the opinion the court says: '

"The defendant tendered 25 instructions, of which 21 were given. Six of these instructions concluded 'The jury must find for the defendant,' or 'You must

find the defendant not guilty,' or words to that effect. Nine instructions mentioned that the plaintiff must be in the exercise of ordinary care for his own safety or that he must not be guilty of contributory negligence.

"One instruction, defendant's (a), mentioned the matter of due care twice; and defendant's instruction (1) three times mentioned the duty of the jury to disregard sympathy.

"This was not a complicated case. It was a typical negligence action, and no unique legal points were involved. It is true that the theories of how the accident occurred were in conflict, but we see nothing about the case that should make the instructions so lengthy, involved and repetitious. The wise trend of the courts of this State is definitely against such instructions. Baker v. Thompson, 337 Ill. App. 327, and the cases therein referred to.

"It is not proper for a party to a lawsuit to ask a witness to repeat eight or nine times a bit of evidence that is favorable to the interrogator for the purpose of impressing that fact upon a jury, and by the same token a jury should be told once only about each proposition of law. To do otherwise will lead to a contest between the litigants to see how often they can repeat that which seems favorable to their cause.

"We are fully in accord with the view expressed in Baker v. Thompson, supra, and feel that when defense attorneys in negligence actions tender an excessive number of instructions, filled with repetition and containing many of a peremptory nature, they do so at their own peril in the event the case is reviewed. Such instructions cannot aid the jury members, but rather will hinder them in the performance of their duty of giving to each side a fair and impartial trial."

This case was decided in 1950. Since that time our Appellate Courts in the other Districts have similarly condemned the practice of giving an inordinate num-

15

ber of instructions peremptory in form. Stone v. Warehouse & Terminal Cartage Co., 6 Ill.App.2d 229; Schacht v. Elliott, 345 Ill. App. 302; Loucks v. Pierce, 341 Ill. App. 253; Triolo v. Frisella, 3 Ill.App.2d 200; Moore v. Daydif, 7 Ill.App.2d 534.

The warning contained in these decisions has not been heeded by many counsel who still seem to believe that in order to fulfill their duty to their client it is necessary that they overwhelm the trial court with a plethora of instructions peremptory in form. It would seem that many counsel have not as yet fully grasped the fact that the purpose of giving instructions is to enlighten the jury and not to create confusion. A constant repetition by the court in its instructions to the jury of the peremptory demand that under certain circumstances they shall find for one party or the other may cause the jury to believe that the court has taken a definite stand upon the issues involved in the lawsuit. There is such a thing as a litigant being instructed out of court. Under the facts and circumstances in the case before us the court erred in giving the eight peremptory instructions which are objected to.

The defendant argues that most of the instructions given in the instant case were instructions which had been approved by some reviewing court in this State, and, therefore, the trial court properly submitted them to the jury. The fact that an instruction has been approved by a reviewing court in some case does not confer an unlimited license upon a trial court to read it to the jury in each and every case before it. The propriety of the instruction depends upon the nature of each individual case.

Many of the instructions were repetitious and the defendant in his brief admits that at least one of the instructions could have properly been combined with another instruction. Instructions which repeat the same legal proposition to the jury are not proper.

16

██ The plaintiff also urges that many of the other instructions were erroneous in form, among these being defendant's instructions 35 and 36. Instruction 35 merely quoted the following subsection of the statute (Ill. Rev. Stat. 1955, chap. 95½, par. 172(a)): "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." Instruction 36, after repeating the section of the statute contained in instruction 35, added the following language:

"If the jury believe from the evidence in this case that the plaintiff, while crossing North Avenue at a point other than a marked crosswalk, or an unmarked crosswalk at an intersection, failed or refused to yield the right of way to the automobile of defendant and that such failure on his part, if any, was negligent and that such negligence, if any, proximately caused or contributed to cause the accident in question, then your verdict should be for the defendant."

The plaintiff urges that the instruction was erroneous in that it omitted the subparagraph of the same statute which provides:

"(d) Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

Both instruction 35 and instruction 36, because subparagraph (d) of the statute was omitted therefrom, did not fully and completely state the law governing the issue before the court. Stegall v. Carlson, 6 Ill. App.2d 388; and see Taylor v. Ries, 3 Ill.App.2d 256; Parkin v. Rigdon, 1 Ill.App.2d 586; Breitmeier v. Sutera, 327 Ill. App. 221.

The defendant cites Green v. Drew, 324 Ill. App. 84, as approving the instructions in the form given. It may be noted that in Parkin v. Rigdon, supra, at page 594, the court discusses the case of Green v. Drew, and says:

"In support of the defendant's theory, he cites the case of Green v. Drew, 324 Ill. App. 84. That case is abstracted in the printed volume and the defendant has supplied the full case in his brief. In that case, defendant's instruction 25 quoted the statute defining a crosswalk and the law governing a pedestrian crossing at a point other than a crosswalk, and stated that if the jury believed from the evidence that the defendant was not guilty of wilful and wanton misconduct, and that the plaintiff was crossing at a point other than a crosswalk, and in so doing was guilty of negligence which proximately caused or contributed to cause the collision and her subsequent injury, the plaintiff could not recover and the jury should find the defendant not guilty. Citing Minnis v. Friend, 360 Ill. 328, 338, as authority for the instruction. This court has carefully read the case of Minnis v. Friend, and fails to find any language in that case that would support defendant's instruction No. 25 in the Green v. Drew case. The opinion in the case of Green v. Drew is in direct contradiction to the law as announced in the cases heretofore cited, namely Breitmeier v. Sutera, 327 Ill. App. 221; Anderson v. Middleton, 350 Ill. App. 59; Walker v. Shea-Matson Trucking Co., 344 Ill. App. 466. These cases were decided by the Appellate Court after the decision in the Green v. Drew case, are well reasoned and in the opinion of this court correctly state the law in Illinois at this time."

With this statement we are in accord.

█ █ The defendant, however, argues that the cases condemning the instruction are not in point because instruction 36 by apt language left it to the

18

jury to determine whether or not failure to yield the right of way was negligence, and whether such negligence, if any, proximately caused or contributed to the accident. This argument is completely disposed of in Parkin v. Rigdon, supra, where the court holds that the statute in question confers no absolute right either upon the pedestrian or the vehicle. The right must be determined upon the particular facts and circumstances of the case. In support of that view the court cited the case of Walker v. Shea-Matson Trucking Co., 344 Ill. App. 466, which was a case dealing with the right of way between two vehicles in an intersection. The instruction as given there did not set out the law fully, and while the instruction left it to the jury to determine whether or not the violation was negligence, nevertheless the instruction was held to be bad. Instructions which merely quote a statute in haec verba have been criticized, and in any case, where by the instruction it is left to the jury to determine whether or not a violation of a statute is negligence, it is essential that the court set out the law declared in the statute fully and completely. This was not done in the instruction before us.

The instruction should be condemned for an additional reason. In telling the jury that if they believe from the evidence in this case "that the plaintiff, while crossing North Avenue" etc., the instruction assumed that the plaintiff was crossing North avenue at a point other than a marked crosswalk, which was one of the matters in dispute. It was a question of fact for the jury and not for the court. The instruction is bad and should not have been given.

The plaintiff also objects to the following instruction given by the court on behalf of the defendant:

"The court instructs the jury that while voluntary intoxication does not constitute negligence in law, proof of that fact is competent to be considered in determining whether the person was taking that care

19

for his safety which a reasonably prudent man who was sober would take under the same circumstances."

The only evidence in the record with reference to intoxication of the plaintiff was that of a witness for the defendant who testified that when he saw the plaintiff five or six minutes before the accident the plaintiff walked "kind of weak, sick or something. He was sick guy." He further testified that he could not say if plaintiff walked with a steady motion, "he walked the way a drunk"; "he kind of sick." The defendant and the man riding with the defendant testified that immediately after the accident they smelled liquor on the plaintiff's breath, and the defendant testified that at that time the plaintiff said to him: "I know I am a drunkard, but I am hurt." Two police officers who arrived at the scene of the accident immediately after the accident testified on behalf of the plaintiff that they smelled no liquor on the plaintiff's breath. One police officer was asked by plaintiff's counsel as to whether plaintiff had been drinking, to which question the court sustained an objection by defendant. The plaintiff testified that he did drink, but that he did not on the day in question stop any place to have a drink, and he further testified that at the time he was in good health.

██ Evidence with reference to the intoxication of the plaintiff could be properly admitted for the purpose of determining whether or not at the time and place in question he was guilty of contributory negligence (Moore v. Daydif, 7 Ill.App.2d 534), and the jury could by a proper instruction have had their attention called to the alleged intoxication of the plaintiff, scanty as the evidence of such intoxication was. However, in the instruction before us the court instructs the jury that they might consider "proof" of voluntary intoxication. The jury might have been properly told that they could consider "evidence." In Jones Commentaries on Evidence, 2nd Ed., vol. 1, sec. 7, it is said:

20

"Though the two terms are often needlessly and carelessly confused, accurately speaking 'proof' is only the effect or result of evidence, and 'evidence' is only the medium of proof. . . . It is declared that 'the former, in legal acceptation, includes the means by which any alleged matter of fact the truth of which is submitted to investigation is established or disproved. The latter is the effect or result of evidence.' [Latikos v. State, 88 So. 45] . . .

"We find occasionally direct judicial condemnation of the indiscriminate use of the two words [Snowden v. State, 62 Miss. 100; Glenn v. State (Miss.) 2 So. 109]; and authorities are plentiful in which their use interchangeably is deprecated, and the distinction pointed by such statements as: 'Proof, taken literally is the perfection of evidence' [Hill v. Watson, 10 S. C. 268]; 'proof is that which convinces; evidence is that which tends to convince' [Jastrzembski v. Marxhausen, (Mich.) 79 N. W. 935]; 'proof is the perfection of evidence, for without evidence there is no proof, though there may be evidence which does not amount to proof' [Schultz v. Plankington Bank, 40 Ill. App. 462]. . . ."

The dictionary definition of "proof" is not the same as that of "evidence." It is true that the terms are frequently used as though they meant the same thing, but where the evidence as to intoxication was extremely slight, as it was here, an instruction which could be deemed to intimate that the court considered the intoxication to be proved is one which is, to say the least, confusing; and under the facts before us the giving of such an instruction is error.

██ In support of the instruction defendant urges the elementary rule that lay witnesses might properly testify concerning a person's condition of sobriety or intoxication. There is no question that such is the law in Illinois. The right of the witnesses to testify is not

an issue in the objection to the instruction, and consequently any discussion concerning it is idle.

■ Instruction 47 was bad in that it limits the question of sympathy to only one party, and it falls within the rule laid down in Rogers v. Mason, 345 Ill. App. 560.

Instruction 51, which told the jury that "if they believe from the evidence in this case that while the defendant was exercising ordinary care in the management and operation of his automobile, the plaintiff, at the time and place of the injury, suddenly and unexpectedly and without the knowledge of the defendant, walked into the path of the defendant's automobile and thereby placed himself in a position of danger" etc., was not supported by the evidence, since the record shows that the defendant saw the plaintiff "about one-half block or so away," at which time the plaintiff was standing on the raised divider in the center of the street; that at the time the defendant was going 20 to 25 miles an hour close to the center lane; that when he was "25 to 35 feet away from him" plaintiff took a "couple of fast steps" and hesitated and started to move and that was when he hit him.

■ Instruction 52 instructs the jury that if the defendant was faced with "sudden and imminent danger" he is not held to the same degree of judgment and presence of mind as one acting under different circumstances. This instruction is in no way applicable to a case of this character.

It is urged by the plaintiff that some of the remarks of the court made during the course of the trial invaded the province of the jury and that the verdict is against the manifest weight of the evidence. Since this case must be tried again, we will make no comment upon the evidence.

The case was close and therefore the jury should have been properly instructed. Moreover, the defendant, discussing the abstract and objecting to plaintiff's omissions therefrom, points out certain testimony in

22

the record from which it might be inferred that the plaintiff was not a very stable citizen, or as the defendant puts it in his brief:

"The complete omission in the abstract of plaintiff's work background which showed him to be a West Madison Street drifter; a man who had been with the Milwaukee Railroad only 6 days prior to the accident, September 6, 1954; but he did not even know the months in 1954 he had worked for his previous employer, the Burlington Railroad, or who his foremen were; he stayed at two hotels on Madison near Halsted, sometimes paying for a day, sometimes for a week."

In a footnote the defendant makes this statement:

"In bringing up this evidence we do not mean to suggest that plaintiff's rights as a pedestrian were less than anyone else's; but this evidence was part of the full picture of the man which the jury had before them and which should have been in the abstract."

The defendant further says that this omission gives a distorted picture of the evidence, apparently indicating that in his opinion the facts concerning the plaintiff's way of life might have had some influence upon the jury in causing them to come to the conclusion they did. We think that such evidence might and probably did carry some weight with the jury. It would certainly have a tendency to place a handicap upon the plaintiff's cause. Considering such circumstances, together with all the other facts and circumstances in the case, it was highly essential that the jury should have been properly and accurately instructed as to the law governing the case. We do not feel that they were so instructed.

The judgment of the Circuit Court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

ROBSON and SCHWARTZ, JJ., concur.